1   Shawn Hanson (State Bar No. 109321)
    shanson@jonesday.com
2   Katherine S. Ritchey (State Bar No. 178409)
    ksritchey@jonesday.com
3   Emily E. Booth (State Bar No. 248008)
    ebooth@jonesday.com
4   JONES DAY
    555 California Street, 26th Floor
5   San Francisco, CA 94104
    Telephone:    (415) 626-3939
6   Facsimile:    (415) 875-5700

7   Attorneys for Defendant
    STANDARD INSURANCE COMPANY
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11
                          CV  08      0330
12  JOHN W. DEWITT,                    Case No.

13              Plaintiff,             NOTICE OF REMOVAL OF CIVIL
                                       ACTION UNDER 28 U.S.C. § 1441
14      v.
                                       [DIVERSITY JURISDICTION]
15  STANDARD INSURANCE COMPANY;
    DOES 1 THROUGH 100,
16
                Defendant.
17

18

19      TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR

20  THE NORTHERN DISTRICT OF CALIFORNIA:

21      PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. § 1441, Defendant Standard

22  Insurance Company ("Standard"), hereby removes the above-entitled action from the Superior

23  Court of the State of California for the County of Alameda to the United States District Court for

24  the Northern District of California.

25      This removal is based upon the original jurisdiction of the United States District Court

26  over the parties consistent with 28 U.S.C. § 1332 based on the existence of diversity of

27  citizenship of the parties.

28

1         In support of its notice of removal, Standard states to the Court as follows:

2    1.     Plaintiff commenced this action against Standard and Does 1 through 100 by filing a

3    complaint in the Superior Court of the State of California for the County of Alameda (the

4    "Superior Court"), entitled John W. Dewitt v. Standard Insurance Company; DOES 1 through

5    100, Case No. RG07348742, on September 28, 2007.

6    2.     On December 20, 2007, Standard executed the Notice and Acknowledgement of Receipt,

7    which constitutes service. A true and correct copy of the Complaint, Summons and Notice and

8    Acknowledgement of Receipt are attached hereto as Exhibit A.

9    3.     On January 16, 2008, Standard filed its General Denial and Defenses to Plaintiff's

10   Complaint in the Superior Court of the State of California for the County of Alameda. A true and

11   correct copy of the General Denial and Defenses is attached hereto as Exhibit B.

12   4.     This Notice of Removal of Civil Action from State Court ("Notice") is timely filed

13   pursuant to 28 U.S.C. § 1446(b) which provides that such notice "shall be filed within thirty days

14   after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading

15   setting forth the claim upon which such action or proceeding is based." Standard has filed this

16   notice within thirty (30) days after service of the Complaint. The Complaint was the first paper

17   from which Standard could ascertain that the action was removable.

18   5.     This Court has original jurisdiction of this action under 28 U.S.C. § 1332 in that it is a

19   civil action wherein the matter in controversy exceeds the sum of $75,000, exclusive of costs and

20   interests, and is between a citizen of a state and a citizen of a foreign state. Specifically, removal

21   is proper based on the following:

22        a.     Standard is informed and believes that the amount in controversy exceeds $75,000

23   because, in addition to seeking damages for Standard's alleged failure to provide disability

24   benefits in excess of the jurisdictional amount, Plaintiff claims an unspecified amount of general

25   damages for mental and emotional distress and other incidental and compensatory damages, as

26   well as punitive damages and attorneys' fees, which amounts must be considered in calculating

27   the amount in controversy. See Galt G/S v. JSS Scandinavia, 142 F. 3d 1150, 1156 (9th Cir.

28   1998) (holding that attorneys fees that plaintiffs can recover as a matter of law must be

1  considered by the Court in calculating the amount in controversy); <u>Surber v. Reliance Nat'l</u>

2  <u>Indem.Co.</u>, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000), citing <u>Richmond v. Allstate Ins. Co.</u>,

3  897 F. Supp. 447, 450 (S.D. Cal. 1995) (exemplary and punitive damages also to be considered

4  in determining amount in controversy). Furthermore, Plaintiff's failure to plead a specific amount

5  of damages in his Complaint should be construed in favor of Standard, supporting a finding that

6  the minimum amount in controversy has been met. <u>See</u> <u>Bosinger v. Phillips Plastic Corporation</u>,

7  57 F. Supp. 2d 986, 989 (S.D. Cal. 1999).

8        b.    Standard is informed and believes that Plaintiff was, at the time this action was

9  commenced in state court, and still is a resident of California.

10        c.    Standard was, at the time of filing this action, and still is incorporated in Oregon,

11  and its principal business office is in Portland, Oregon.  The day-to-day control of Standard is

12  exercised from Oregon. The individuals who control the day-to-day operations of Standard's

13  business work at Standard's corporate headquarters, located in Portland, Oregon.  Standard

14  supervises its business operations throughout the country from Oregon.  The vast majority of

15  Standard's employees are located in Oregon.  Standard is not a citizen of the State of California.

16        d.    Defendants designated as Does 1 through 100 are fictitious defendants, are not

17  parties to this action, have not been served and are to be disregarded for the purposes of this

18  removal. 28 U.S.C. § 1441(a).

19  6.    Based on the foregoing, this action is one over which this Court has original jurisdiction

20  and which may be removed by Standard to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446

21  because complete diversity of citizenship exists between Plaintiff and Standard.

22  Dated: January 17, 2008          Respectfully submitted,

23                                   Jones Day

24

25                                   By: _____

26                                      Emily E. Booth

27                                 Counsel for Defendant
                               STANDARD INSURANCE COMPANY

28

# EXHIBIT A

**Fricker & Mellen & Associates**
Timothy J. Fricker, Esq. 183309
James G. Mellen, Esq. 122035
Tribune Tower
409 13th Street, 17th Floor
Oakland, CA 94612
Tel: (510) 663-8484
Fax: (510) 663-0639

Attorneys for Plaintiff
John DeWitt

ENDORSED
FILED
ALAMEDA COUNTY

SEP 2 8 2007

CLERK OF THE SUPERIOR COURT
By ~~BARBARA LAMOTTE~~
                                    Deputy

# SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

JOHN W. DEWITT,

　　　　Plaintiff,

　　vs.

THE STANDARD INSURANCE
COMPANY; DOES 1 THROUGH 100,

　　　　Defendants

Case No.: *RG* 07348742

COMPLAINT AND JURY DEMAND

1) Breach of the Duty of Good Faith and Fair Dealing;

2) Breach of Contract

Plaintiff alleges as follows:

### GENERAL ALLEGATIONS

#### Introduction

1. On or about June 28, 2004, Plaintiff, JOHN DEWITT ("MR. DEWITT") became disabled under a disability policy through his employer, the City of Los Angeles, a governmental entity.

2. MR. DEWITT, who has been diagnosed with HIV, secondary anxiety and depression, cognitive impairments due to his litany of medications, Hepatitis B and back pain associated with spondylolisthesis, timely filed a claim for disability benefits. However, instead of paying MR. DEWITT the benefits to which he was entitled under the

1  terms of a disability Policy, STANDARD, unreasonably refused to pay his claim for

2  benefits.

3  <u>**Factual Allegations**</u>

4      3. Plaintiff is, and at all relevant times was, a resident and citizen of the State of

5  California.

6      4. Plaintiff alleges upon information and belief that Defendant, STANDARD

7  INSURANCE COMPANY ("STANDARD"), is, and at all relevant times was, a corporation

8  duly organized and existing under and by virtue of the laws of the State of Oregon and

9  authorized to transact and transacting the business of insurance in this state.

10      5. The true names of capacities, whether individual, corporate, associate, or

11  otherwise, of Defendants, DOES 1 through 10, inclusive, are unknown to Plaintiff, who

12  therefore sues said Defendants by such fictitious names. Plaintiff is informed and

13  believes and on such information and belief alleges that each of the Defendants sued

14  herein as a DOE is legally responsible in some manner for the events and happenings

15  referred to herein, and will ask leave of this court to amend this Complaint to insert their

16  true names and capacities in place and instead of the fictitious names when the same

17  become known to Plaintiff.

18      6. At all relevant times, Defendants, and each of them, were the agents and

19  employees of each of the remaining Defendants, and were at all times acting within the

20  purpose and scope of said agency and employment, and each Defendant has ratified

21  and approved the acts of his agent.

22      7. At all relevant times herein, MR. DEWITT was covered under Short Term and

23  Long Term Disability Policies, Numbers 630363-C and 630363-D, respectfully. These

24  policies were issued by STANDARD to The City of Los Angeles, a governmental agency

25  and MR. DEWITT's employer at the time he became disabled (the "Policy"). A copy of

26  the Policies is attached hereto as Exhibit "A" and Exhibit "B."

27      8. At all relevant times herein, all premiums due under the Policies have been

28                                    Page 2

1    paid and Plaintiff has performed all his obligations under the Policies.

2       9. On or about June 28, 2004, MR. DEWITT became disabled under the terms of

3    the Policy.

4       10. On or about August 19, 2004, Dr. John P. Laura, a Board Certified Family

5    Practitioner, completed an Attending Physician Statement confirming MR. DEWITT's

6    disability due to adjustment disorder and anxious mood.

7       11. At the time of filing this complaint, STANDARD has refused and continues to

8    refuse to make a final decision to deny or approve MR. DEWITT's claim for disability

9    benefits.

10      12. On or about June 6, 2006, Dr. Laura completed another Attending Physician

11   Statement confirming MR. DEWITT's sleep disturbances, chest pain, panic and

12   decreased concentration. Yet, no matter how much medical evidence was submitted to

13   STANDARD that substantiated and confirmed his disability, on or about September 29,

14   2006, STANDARD continued to fail to pay the claim.

15      13. Plaintiff has been, and remains, disabled under the terms of the subject

16   Policy, to date, STANDARD has unreasonably failed and refused to pay Plaintiff the

17   benefits to which he is entitled.

18      PLAINTIFF, JOHN DEWITT, FOR A FIRST CAUSE OF ACTION AGAINST

19   DEFENDANTS, STANDARD INSURANCE COMPANY; and DOES 1 through 13,

20   inclusive, FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING,

21   ALLEGES:

22      14. Plaintiff refers to each and every paragraph of the General Allegations and

23   incorporates those paragraphs as though set forth in full in this cause of action.

24      15. Defendants, and each of them, have breached their duty of good faith and fair

25   dealing owed to Plaintiff in the following respects:

26      Unreasonably failing to make payments to Plaintiff at a time when Defendants

27      know that Plaintiff was entitled to the payments under the terms of the Policy.

28                          Page 3

Unreasonably delaying payments to Plaintiff knowing Plaintiff's claim for benefits under the Policy to be valid.

Unreasonably withholding payments from Plaintiff knowing Plaintiff's claim for benefits under the Policy to be valid.

Unreasonably misrepresenting to Plaintiff pertinent facts and insurance Policy provisions relating to the coverage in issued.

Failing to reasonably and promptly investigate and process Plaintiff's claim for benefits.

Not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim for benefits in which liability has become reasonably clear.

Failing to promptly provide a reasonable explanation of the basis relied upon in the Policy, in relation to the applicable facts, for the denial of Plaintiff's claim for benefits.

Plaintiff is informed and believes and thereon alleges that Defendant has breached its duty of good faith and fair dealing owed to Plaintiff by other acts or omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

16. As a proximate result of the aforementioned unreasonable conduct of Defendants, Plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

17. As a further proximate result of the aforementioned unreasonable conduct of Defendants, Plaintiff has suffered anxiety, worry, mental and emotional distress, all to Plaintiff's general damage in a sum to be determined at the time of trial.

18. As a further proximate result of the unreasonable conduct of Defendants, Plaintiff was compelled to retain legal counsel to obtain the benefits due under the Policy.

1  Therefore, Defendants are liable to Plaintiff for those attorneys' fees, witness fees and costs

2  of litigation reasonably necessary and incurred by Plaintiff in order to obtain the Policy

3  benefits in a sum to be determined at the time of trial.

4      19. Defendants' conduct described herein was intended by Defendants to cause

5  injury to Plaintiff or was despicable conduct carried on by the Defendants with a willful and

6  conscious disregard of the rights of Plaintiff, or subjected Plaintiff to cruel and unjust

7  hardship in conscious of Plaintiff's rights, or was an intentional misrepresentation, deceit, or

8  concealment of a material fact known to the Defendants with the intention to deprive

9  Plaintiff of property, legal rights or to otherwise cause injury, such as to constitute malice,

10  oppression or fraud under California Civil Code §3294, thereby entitling Plaintiff to punitive

11  damages in an amount appropriate to punish or set an example of Defendants.

12      20. Defendants' conduct was highly reprehensible because (1) it caused plaintiff not

13  only substantial economic loss, but also personal physical injury and physical sickness; (2) it

14  demonstrated defendants' indifference and reckless disregard as to the health and safety of

15  Plaintiff; (3) it was repeated and continuous, rather than just an isolated incident; (4) it

16  caused harm to plaintiffs not by accident, but rather by defendants' intentional malice,

17  trickery, and deceit; and (5) plaintiff was financial vulnerable to Defendants' conduct.

18      21. Defendants' conduct described herein was undertaken by the corporate

19  Defendant's deputies or managing agents, identified herein as DOES 1 through 100, who

20  were responsible for claims supervision and operations, underwriting, communications

21  and/or decisions. The aforedescribed conduct of said managing agents and individuals was

22  therefore undertaken on behalf of the corporate Defendants. Said corporate Defendants

23  further had advance knowledge of the actions and conduct of said individuals whose actions

24  and conduct were ratified, authorized, and approved by managing agents whose precise

25  identities are unknown to Plaintiff at this time are therefore identified and designated herein

26  as DOES 1 through 10, inclusive.

27

28

1   PLAINTIFF, JOHN DEWITT, FOR A SECOND CAUSE OF ACTION AGAINST

2   DEFENDANTS, STANDARD INSURANCE COMPANY; and DOES 1 through 10, inclusive,

3   FOR BREACH OF CONTRACT, ALLEGES:

4       22. Plaintiff refers to each and every paragraph of the General Allegations and

5   incorporates those paragraphs as though set forth in full in this cause of action.

6       23. Defendants, and each of them, owed duties and obligations to Plaintiff under the

7   Policy.

8       24. Defendants, and each of them, breached the terms and provisions of the

9   insurance Policy by failing and refusing to pay benefits under the Policy as set forth in the

10  second paragraph of the First Cause of Action, incorporated herein by referenced.

11      25. As a direct and proximate result of Defendants' conduct and breach of their

12  contractual obligations, Plaintiff has suffered damages under the Policy in an amount to be

13  determined according to proof at the time of trial.

14      WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them,

15  as follows:

16      AS TO THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS, STANDARD

17  INSURANCE COMPANY; and DOES 1 through 10, inclusive, FOR BREACH OF THE

18  DUTY OF GOOD FAITH AND FAIR DEALING:

19      26. Damages for failure to provide benefits under the Policy, plus interest, including

20  prejudgment interest, and other economic and consequential damages, in a sum to be

21  determined at the time of trial;

22      27. General damages for mental and emotional distress in a sum to be determined at

23  the time of trial;

24      For attorneys' fees, witness fees and costs of litigation incurred by Plaintiff to obtain

25  the Policy's benefits in an amount to be determined at the time of trial;

26      Punitive and exemplary damages in an amount appropriate to punish or set an

27  example of Defendants;

28                          Page 6

1  For costs of suit incurred herein; and,

2  For such other and further relief as the Court deems just and proper.

3  AS TO THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS, STANDARD

4  INSURANCE COMPANY; and DOES 1 through 10, inclusive, FOR BREACH OF

5  CONTRACT:

6  Damages under the Policy in an amount to be determined according to proof at the

7  time of trial;

8  For costs of suit incurred herein; and,

9  For such other and further relief as the Court deems just and proper.

10

11

12  DATED:  September 28, 2007

13

14  _James C. Mell____

15  Attorneys for Plaintiff

16

17  **DEMAND FOR JURY TRIAL**

18  Plaintiff hereby demands a trial by jury.

19

20

21  Attorneys for Plaintiff

22

23  _James G. Mell_

24

25

26

27

28

# STANDARD INSURANCE COMPANY

A Stock Life Insurance Company
900 SW Fifth Avenue
Portland, Oregon 97204-1282
(503) 321-7000

*People. Not Just Policies.*®

## CERTIFICATE

## GROUP SHORT TERM DISABILITY INSURANCE

| Policyowner: | City of Los Angeles |
|---|---|
| Policy Number: | 630363-C |
| Effective Date: | January 1, 2001 |

A Group Policy has been issued to the Policyowner. We certify that you will be insured as provided by the terms of the Group Policy. If your coverage is changed by an amendment to the Group Policy, we will provide the Policyowner with a revised Certificate or other notice to be given to you.

Possession of this Certificate does not necessarily mean you are insured. You are insured only if you meet the requirements set out in this Certificate.

"We", "us" and "our" mean Standard Insurance Company. "You" and "your" mean the Member. All other defined terms appear with the initial letter capitalized. Section headings, and references to them, appear in boldface type.

President

GC190-STD/S399

Printed on recycled paper

## Table of Contents

COVERAGE FEATURES...................................................................... 1
   GENERAL POLICY INFORMATION ............................................ 1
   BECOMING INSURED......................................................... 1
   PREMIUM CONTRIBUTIONS ................................................. 2
   SCHEDULE OF INSURANCE ................................................. 2
   DISABILITY PROVISIONS .................................................... 2
   EXCLUSIONS AND LIMITATIONS ......................................... 2
   DEDUCTIBLE INCOME ....................................................... 3
   OTHER PROVISIONS .......................................................... 3
INSURING CLAUSE .................................................................. 4
DEFINITION OF DISABILITY ...................................................... 4
RETURN TO WORK INCENTIVE .................................................. 4
TEMPORARY RECOVERY ......................................................... 4
WHEN STD BENEFITS END ....................................................... 5
PREDISABILITY EARNINGS ....................................................... 5
DEDUCTIBLE INCOME ............................................................. 6
RULES FOR DEDUCTIBLE INCOME ............................................. 6
WAIVER OF PREMIUM ............................................................. 6
BENEFITS AFTER INSURANCE ENDS OR IS CHANGED........................ 6
EFFECT OF NEW DISABILITY .................................................... 7
EXCLUSIONS ........................................................................ 7
LIMITATIONS ....................................................................... 7
CLAIMS............................................................................... 7
ALLOCATION OF AUTHORITY.................................................... 9
TIME LIMITS ON LEGAL ACTIONS .............................................. 9
INCONTESTABILITY PROVISIONS................................................ 9
WHEN YOUR INSURANCE BECOMES EFFECTIVE ............................. 10
ACTIVE WORK PROVISIONS...................................................... 11
WHEN YOUR INSURANCE ENDS ................................................. 11
REINSTATEMENT OF INSURANCE................................................ 12
DEFINITIONS ....................................................................... 12

## Index of Defined Terms

Active Work, Actively At Work, 11

Benefit Waiting Period, 12

Change In Family Status, 12
Class Definition, 1
Contributory, 12

Deductible Income, 6
Disability, 4
Disabled, 4
Domestic, 13

Eligibility Waiting Period, 13
Employer, 1
Evidence Of Insurability, 13

Group Policy, 13
Group Policy Effective Date, 1
Group Policy Number, 1

Injury, 13

Maximum Benefit Period, 13

Maximum STD Benefit, 2
Member, 1
Minimum, 2

Noncontributory, 13

Partial Disability Income Percentage, 2
Partially Disabled, 4
Physician, 13
Policyowner, 1
Predisability Earnings, 5
Pregnancy, 13
Prior Plan, 13
Proof Of Loss, 8
PSBI, 10

Salary Continuation Offset, 3
Sickness, 13
Spouse, 13
STD Benefit, 13

Temporary Recovery, 4

Work Earnings, 4

## COVERAGE FEATURES

This section contains many of the features of your short term disability (STD) insurance.    Other provisions, including exclusions, limitations, and Deductible Income, appear in other sections.  Please refer to the text of each section for full details.  The Table of Contents and the Index of Defined Terms help locate sections and definitions.

## GENERAL POLICY INFORMATION

| | |
|---|---|
| Group Policy Number: | 630363-C |
| Policyowner: | City of Los Angeles |
| Employer(s): | City of Los Angeles |
| Group Policy Effective Date: | January 1, 2001 |
| Policy Issued in: | California |

## BECOMING INSURED

To become insured you must: (a) Be a Member; (b) Complete your Eligibility Waiting Period; and (c) Meet the requirements in **Active Work Provisions** and **When Your Insurance Becomes Effective.**

Definition of Member:    You are a Member if you are an active civilian employee of the Employer regularly working at least 40 hours each pay period, and one of the following:

1. A contributing member of the City Employees' Retirement System, and **not** represented by an employee representation unit; or

2. Eligible for membership in one of the employee representation units for which an Employer-sponsored short term disability plan has been negotiated in a Memorandum Of Understanding (MOU); or

3. An active elected official or member of the Board of Public Works of the Employer.

You are not a Member if you are:

1. A part-time, intermittent, temporary or seasonal employee, or employee in a similar position; or

2. A full-time member of the armed forces of any country.

Class Definition:    Not applicable

Eligibility Waiting Period:    You are eligible on one of the following dates:

If you are a Member on the Group Policy Effective Date, you are eligible on that date.

If you become a Member after the Group Policy Effective Date, you are eligible on the date you become a Member.

Evidence Of Insurability:    Required:

a.   For late application for Contributory insurance.

b.  For reinstatements if required.

## PREMIUM CONTRIBUTIONS

Insurance is:                     Plan 1: Noncontributory (Basic)

                                  Plan 2: Contributory (Supplemental)

The cost of insurance may be funded by contributions to an IRC Section 125 Cafeteria Plan.

## SCHEDULE OF INSURANCE

You may apply to become insured under Plan 2. If you do not become insured under Plan 2, you will automatically become insured under Plan 1, provided you meet the requirements to become insured under the Group Policy.

**Plan 1**

| | |
|---|---|
| Weekly STD Benefit: | 50% of the first $924 of your weekly Predisability Earnings, reduced by Deductible Income. |
| Maximum weekly STD Benefit: | $462 before reduction by Deductible Income. |
| Minimum weekly STD Benefit: | $15 |

**Plan 2**

| | |
|---|---|
| Weekly STD Benefit: | 66 2/3% of the first $4,156 of your weekly Predisability Earnings, reduced by Deductible Income. |
| Maximum weekly STD Benefit: | $2,771 before reduction by Deductible Income. |
| Minimum weekly STD Benefit: | $15 |
| Benefit Waiting Period: | The period for which you are eligible for 100% or 75% sick leave pay under the Employer's sick leave plan. |
| Maximum Benefit Period: | 180 days |

STD Benefits are paid weekly. However, if you are Disabled for less than one full week, we will pay one-seventh of the STD Benefit for each day of Disability.

## DISABILITY PROVISIONS

| | |
|---|---|
| Partial Disability: | Covered.  The Partial Disability Income Percentage is 80% of your Predisability Earnings. |

See **Definition Of Disability** for more information.

## EXCLUSIONS AND LIMITATIONS

| | |
|---|---|
| Work Related Disability Exclusion: | Yes |

See **Exclusions** and **Limitations** for these and other exclusions and limitations.

## DEDUCTIBLE INCOME

Salary Continuation Offset:

100% or 75% sick leave pay or other salary continuation which becomes payable to you by your Employer after the Benefit Waiting Period, but not including vacation pay.

See **Deductible Income** for this and other Deductible Income.

## OTHER PROVISIONS

Predisability Earnings based on:

Earnings in effect on your last full day of Active Work.

## INSURING CLAUSE

If you become Disabled while insured under the Group Policy, we will pay STD Benefits according to the terms of the Group Policy after we receive satisfactory Proof Of Loss.

## DEFINITION OF DISABILITY

You are Disabled if you meet either of the following definitions:

    A.  Definition Of Disability; or

    B.  Definition Of Partial Disability.

A.  Definition Of Disability

    You are Disabled if, as a result of Sickness, Injury or Pregnancy, you are unable to perform with reasonable continuity the material duties of your own occupation.

B.  Definition Of Partial Disability

    You are Partially Disabled when you work for your Employer but, as a result of Sickness, Injury or Pregnancy, are unable to earn more than the Partial Disability Income Percentage shown in the **Coverage Features**.

    One half of your Work Earnings will be Deductible Income. See **Return To Work Incentive** and **Deductible Income**.

## RETURN TO WORK INCENTIVE

A.  During The Benefit Waiting Period

    You may serve your Benefit Waiting Period while working for your Employer, if you meet either the Definition Of Disability or the Definition Of Partial Disability.

B.  After The Benefit Waiting Period

    You are eligible for the Return To Work Incentive on the first day you work for your Employer after the Benefit Waiting Period if STD Benefits are payable on that date.

    One half of your Work Earnings will be Deductible Income.

    Work Earnings means your gross weekly earnings from work you perform for your Employer while Disabled.

## TEMPORARY RECOVERY

You may temporarily recover from your Disability during the Maximum Benefit Period, and then become Disabled again from the same cause or causes, without having to serve a new Benefit Waiting Period. Temporary Recovery means you cease to be Disabled for no longer than the allowable period.

A.  Allowable Period

    The allowable period of recovery during the Maximum Benefit Period is a total of 30 days.

B.  Effect Of Temporary Recovery

    If your Temporary Recovery does not exceed the allowable period, 1 through 4 below will apply.

    1.  The Predisability Earnings used to determine your STD Benefit will not change.

    2.  The period of Temporary Recovery will not count toward your Maximum Benefit Period.

3.  No STD Benefits will be payable for the period of Temporary Recovery.

4.  Except as stated above, the provisions of the Group Policy will be applied as if there had been no interruption of your Disability.

## WHEN STD BENEFITS END

Your STD Benefits end automatically on the earliest of 1 through 5 below.

1.  The date you are no longer Disabled.

2.  The date your Maximum Benefit Period ends.

3.  The date you die.

4.  The date you begin working for an employer other than your Employer, or become self-employed.

5.  The date long term disability benefits become payable to you under a group long term disability policy issued by us.

## PREDISABILITY EARNINGS

Your Predisability Earnings will be based on your earnings in effect on your last full day of Active Work unless a different date applies (see the **Coverage Features**). Any subsequent change in your earnings will not affect your Predisability Earnings.

Predisability Earnings means your weekly rate of earnings from your Employer, including:

1.  Contributions you make through a salary reduction agreement with your Employer to:

    a.  An Internal Revenue Code (IRC) Section 401(k), 403(b), 408(k), or 457 deferred compensation arrangement; or

    b.  An executive nonqualified deferred compensation arrangement.

2.  Shift differential pay.

3.  Amounts contributed to your fringe benefits according to a salary reduction agreement under an IRC Section 125 plan.

4.  Bonuses as defined by the Los Angeles City Employees' Retirement System.

Predisability Earnings does not include:

1.  Overtime pay.

2.  Your Employer's contributions on your behalf to any deferred compensation arrangement or pension plan.

3.  Any other extra compensation.

4.  Commissions.

If you are paid on an annual contract basis, your weekly rate of earnings is one fifty-second (1/52nd) of your annual contract salary.

If you are paid hourly, your weekly rate of earnings is based on your hourly pay rate multiplied by the number of hours you are regularly scheduled to work per week, but not more than 40 hours. If you do not have regular work hours, your weekly rate of earnings is based on the average number of hours you worked per week during the preceding 52 weeks (or during your period of employment if less than 52 weeks), but not more than 40 hours.

## DEDUCTIBLE INCOME

Deductible Income means:

1.  Your Work Earnings, as described in the **Return To Work Incentive**.

2.  Any amount you receive or are eligible to receive because of your disability under a state disability income benefit law or similar law.

3.  Any amount you receive or are eligible to receive because of your disability under any other group disability plan or group disability insurance policy.

4.  Any amount you receive by compromise, settlement, or other method as a result of a claim for any of the above, whether disputed or undisputed.

5.  Sick pay or other salary continuation as shown in the **Coverage Features**.

## RULES FOR DEDUCTIBLE INCOME

A.  Weekly Equivalents

Each week we will determine your STD Benefit using the Deductible Income for the same weekly period, even if you actually receive the Deductible Income in another week.

If you are paid Deductible Income in a lump sum or by a method other than weekly, we will determine your STD Benefit using a prorated amount. We will use the period of time to which the Deductible Income applies. If no period of time is stated, we will use a reasonable one.

B.  Your Duty To Pursue Deductible Income

You must pursue Deductible Income for which you may be eligible. We may ask for written documentation of your pursuit of Deductible Income. You must provide it within 60 days after we mail you our request. Otherwise, we may reduce your STD Benefits by the amount we estimate you would be eligible to receive upon proper pursuit of the Deductible Income.

C.  Pending Deductible Income

We will not deduct pending Deductible Income until it becomes payable. You must notify us of the amount of the Deductible Income when it is approved. You must repay us for the resulting overpayment of your claim. See **Claims**.

## WAIVER OF PREMIUM

Your insurance will continue without payment of premiums while STD Benefits are payable.

## BENEFITS AFTER INSURANCE ENDS OR IS CHANGED

Your right to receive STD Benefits for a period of Disability which begins while you are insured will not be affected by:

1.  Termination of the Group Policy after you become Disabled;

2.  Termination of your insurance while the Group Policy remains in force; or

3.  Any amendment to the Group Policy approved after the date you become Disabled.

## EFFECT OF NEW DISABILITY

If a period of Disability is extended by a new cause while STD Benefits are payable, STD Benefits will continue while you remain Disabled. However, 1 and 2 below will apply.

1.  STD Benefits will not continue beyond the end of the original Maximum Benefit Period.

2.  All provisions of the Group Policy, including the **Exclusions** and **Limitations** sections will apply to the new cause of Disability.

## EXCLUSIONS

A.  War

   You are not covered for a Disability caused or contributed to by War or any act of War. War means declared or undeclared war, whether civil or international, and any substantial armed conflict between organized forces of a military nature.

B.  Intentionally Self-Inflicted Injury

   You are not covered for a Disability caused or contributed to by an intentionally self-inflicted Injury, while sane or insane.

C.  Work Related

   You are not covered for a Disability arising out of or in the course of any employment for wage or profit.

## LIMITATIONS

A.  Care Of A Physician

   You must be under the ongoing care of a Physician during the Benefit Waiting Period. No STD Benefits will be paid for any period of Disability when you are not under the ongoing care of a Physician.

B.  Occupational Benefits

   No STD Benefits will be paid for any period when you are eligible to receive benefits under a workers' compensation law or similar law. If your claim for these benefits is accepted, compromised or settled (whether disputed or undisputed), you must repay us for the full amount of any payments we make to you while your claim for occupational benefits is pending.

C.  Working

   No STD Benefits will be paid for any period: (a) when you are working for wage or profit for any employer other than your Employer; or (b) when you are self-employed. This limitation applies whether you are working in your own or another occupation.

## CLAIMS

A.  Filing A Claim

   Claims should be filed on our forms. If you do not receive our forms within 15 days after you ask for them, you may submit your claim in a letter to us. The letter should include the date Disability began, and the cause and nature of the Disability.

B. Time Limits On Filing Proof Of Loss

You must give us Proof Of Loss within 90 days after the end of the Benefit Waiting Period. If you cannot do so, you must give it to us as soon as reasonably possible, but not later than one year after that 90-day period. If Proof Of Loss is filed outside these time limits, your claim will be denied. These limits will not apply while you lack legal capacity.

C. Proof Of Loss

Proof Of Loss means written proof that you are Disabled and entitled to STD Benefits. Proof Of Loss must be provided at your expense.

D. Documentation

At your expense, you must submit completed claims statements, your signed authorization for us to obtain information, and any other items we may reasonably require in support of your claim. If you do not provide the documentation within 60 days after we mail you our request, your claim may be denied.

E. Investigation Of Claim

We may investigate your claim at any time.

At our expense, we may have you examined at reasonable intervals by specialists of our choice. We may deny or suspend STD Benefits if you fail to attend an examination or cooperate with the examiner.

F. Time Of Payment

We will pay STD Benefits within 60 days after you satisfy Proof Of Loss.

STD Benefits will be paid to you at the end of each week you qualify for them. STD Benefits remaining unpaid at your death will be paid to your estate.

G. Overpayment Of Claim

We will notify you of the amount of any overpayment of your claim under any group disability insurance policy issued by us. You must immediately repay us. You will not receive any STD Benefits until we have been repaid in full. In the meantime, any STD Benefits paid, including the Minimum STD Benefit, will be applied to reduce the amount of the overpayment. We may charge you interest at the legal rate for any overpayment which is not repaid within 30 days after we first mail you notice of the amount of the overpayment.

H. Notice Of Decision On Claim

You will receive a written decision on your claim within a reasonable time after we receive your claim.

If you do not receive our decision within 90 days after we receive your claim, you will have an immediate right to request a review as if your claim had been denied.

If we deny any part of your claim, you will receive a written notice of denial containing:

1. The reasons for our decision;

2. Reference to the parts of the Group Policy on which our decision is based;

3. A description of any additional information needed to support your claim; and

4. Information concerning your right to a review of our decision.

I.    Review Procedure

You must request in writing a review of a denial of all or part of your claim within 60 days after you receive notice of the denial.

When you request a review, you may send us written comments or other items to support your claim. You may review any non-privileged information that relates to your request for review.

We will review your claim promptly after we receive your request. We will send you a notice of our decision within 60 days after we receive your request, or within 120 days if special circumstances require an extension. We will state the reasons for our decision and refer you to the relevant parts of the Group Policy.

J.    Assignment

The rights and benefits under the Group Policy are not assignable.

## ALLOCATION OF AUTHORITY

Except for those functions which the Group Policy specifically reserves to the Policyowner, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in its administration, interpretation, and application.

Our authority includes, but is not limited to:

1.    The right to resolve all matters when a review has been requested;

2.    The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;

3.    The right to determine:

a.    Eligibility for insurance;

b.    Entitlement to benefits;

c.    Amount of benefits payable;

d.    Sufficiency and the amount of information we may reasonably require to determine a., b., or c., above.

Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

## TIME LIMITS ON LEGAL ACTIONS

No action at law or in equity may be brought until 60 days after you have given us Proof Of Loss. No such action may be brought more than three years after the earlier of:

1.    The date we receive Proof Of Loss; and

2.    The end of the period within which Proof Of Loss is required to be given.

## INCONTESTABILITY PROVISIONS

A.    Incontestability Of Member's Insurance

Any statement you make to obtain insurance is a representation and not a warranty.

No misrepresentation by you will be used to reduce or deny your claim unless:

1.    Your insurance would not have been approved if we had known the truth; and

2. We have given you a copy of a written instrument signed by you which contains your misrepresentation.

After your insurance has been in effect for two years, we will not use a misrepresentation by you to reduce or deny your claim, unless it was a fraudulent misrepresentation.

B. Incontestability Of Group Policy

Any statement made by the Policyowner or Employer to obtain the Group Policy is a representation and not a warranty.

No misrepresentation by the Policyowner or Employer will be used to deny a claim or to deny the validity of the Group Policy unless:

1. The Group Policy would not have been issued if we had known the truth; and

2. We have given the Policyowner or Employer a copy of a written instrument signed by the Policyowner or Employer which contains the misrepresentation.

The validity of the Group Policy will not be contested after it has been in force for two years, except for nonpayment of premiums or fraudulent misrepresentations.

## WHEN YOUR INSURANCE BECOMES EFFECTIVE

The **Coverage Features** states whether your insurance is Contributory or Noncontributory.

A. Noncontributory Insurance

Subject to the **Active Work Provisions**, your Noncontributory insurance becomes effective on the later of (a) the date you become eligible, and (b) the date your enrollment form is received by PSBI (Prudential Service Bureau International).

B. Contributory Insurance

You must apply in writing for Contributory insurance and agree to pay premiums. Subject to the **Active Work Provisions**, your Contributory insurance becomes effective on the appropriate following date:

1. If you become a Member before November 1, 1997, the following will apply:

   a. If you enroll for Contributory insurance under the Group Policy before November 1, 1997, your Contributory insurance becomes effective on January 1, 1998.

   b. If you do not enroll for Contributory insurance under the Group Policy before November 1, 1997, you must wait until the following annual enrollment period to enroll and you will be required to submit satisfactory Evidence Of Insurability (unless you enroll within 30 days of a Change of Family Status). Your Contributory insurance will become effective on the later of (a) the January 1 following the annual enrollment period in which you enroll, and (b) the date we approve your Evidence Of Insurability.

2. If you become a Member on or after November 1, 1997, the following will apply:

   a. If your enrollment form is received by PSBI within 60 days after the date you become a Member and you elect Contributory insurance, your Contributory insurance becomes effective on the later of (a) the date you become eligible, and (b) the date your enrollment form is received by PSBI.

   b. If you do not enroll for Contributory insurance under the Group Policy within 60 days after the date you become a Member, you must wait until the following annual enrollment period to enroll and you will be required to submit satisfactory Evidence Of Insurability (unless you enroll within 30 days of a Change of Family Status). Your Contributory insurance will

become effective on the later of (a) the January 1 following the annual enrollment period in which you enroll, and (b) the date we approve your Evidence Of Insurability.

3. If your enrollment form is received by PSBI within 30 days of a Change In Family Status, you will not be required to submit Evidence Of Insurability. Your insurance will become effective on the later of (a) the date of the Change In Family Status, and (b) the date your enrollment form is received by PSBI. Note: The addition or deletion of Contributory coverage due to a Change In Family Status must be consistent with the nature of the Change In Family Status.

Note: If you wish to terminate Contributory coverage, you may do so during an annual enrollment period or within 30 days of a Change In Family Status.

## ACTIVE WORK PROVISIONS

A. Active Work Requirement

If you are incapable of Active Work because of Sickness, Injury or Pregnancy on the day before the scheduled effective date of your insurance, your insurance will not become effective until the day after you complete one full day of Active Work as an eligible Member.

Active Work and Actively At Work mean performing the material duties of your own occupation at your Employer's usual place of business.

You will also meet the Active Work requirement if:

1. You were absent from Active Work because of a regularly scheduled day off, holiday, or vacation day;

2. You were Actively At Work on your last scheduled work day before the date of your absence; and

3. You were capable of Active Work on the day before the scheduled effective date of your insurance.

B. Changes In Insurance

This Active Work requirement also applies to any increase in your insurance. However, if you return to Active Work during a period of Disability or Temporary Recovery (see **Temporary Recovery**), you will not qualify for any change in insurance caused by a change in:

1. Your status as a member of a class;

2. The rate of earnings used to determine your Predisability Earnings; or

3. The terms of the Group Policy.

## WHEN YOUR INSURANCE ENDS

Your insurance ends automatically on the earliest of:

1. The date the last period ends for which you made a premium contribution, if your insurance is Contributory.

2. The date the Group Policy terminates.

3. The date your employment terminates. However, if your employment terminates because you retire, insurance ends on the last day of the calendar month in which you retire.

4. The date you cease to be a Member or enter a non-pay status with the Employer. However, your insurance will be continued during the following periods, unless it ends under 1 through 3 above.

   a. While your Employer is paying you at least the same Predisability Earnings paid to you immediately before you ceased to be a Member.

   b. During the Benefit Waiting Period and while STD Benefits are payable.

   c. During a leave of absence if continuation of your insurance under the Group Policy is required by a state-mandated family or medical leave act or law.

   d. During the first six months in which you are in a non-pay status, provided you pay premiums for the entire amount of your insurance continued during the period of your non-pay status (including premiums previously paid by the Employer) and you remain insured under the same Plan.

   e. While 100% or 75% sick leave pay is payable to you by your Employer.

## REINSTATEMENT OF INSURANCE

If your insurance ends, you may become insured again as a new Member. However, the following will apply.

1. If your insurance ends because you enter a non-pay status and you return to a pay status within 12 calendar months, you will not be required to provide Evidence Of Insurability to become insured again. However, if you re-enter a pay status after more than 12 calendar months, you will be required to provide Evidence Of Insurability to become insured again.

2. If your insurance ends because you fail to make a required premium contribution, you must provide Evidence Of Insurability to become insured again.

3. If your insurance ends because you are on a federal or state mandated family or medical leave of absence, and you become a Member again immediately following the period allowed, your insurance will be reinstated pursuant to the federal or state mandated family or medical leave act or law.

## DEFINITIONS

**Benefit Waiting Period** means the period you must be continuously Disabled before STD Benefits become payable. No STD Benefits are payable for the Benefit Waiting Period. See **Coverage Features**.

**Change In Family Status** means:

1. Your marriage or divorce.

2. The beginning or ending of a domestic partner relationship.

3. Death of your Spouse/Domestic Partner.

4. Death of your child dependent.

5. Birth or adoption of a child dependent.

6. Termination or commencement of employment for your Spouse/Domestic Partner.

7. A change from part-time to full-time employment status or from full-time to part-time employment status by you or your Spouse/Domestic Partner.

8. Taking of a leave of absence from employment by your Spouse/Domestic Partner.

**Contributory** means you pay all or part of the premium for your insurance.

Domestic Partner means an individual with whom you have completed an affidavit of declaration of domestic partnership, submitted that affidavit to the Employer, and filed that affidavit for public record if required by law.

Eligibility Waiting Period means the period you must be a Member before you become eligible for insurance. See **Coverage Features**.

Providing Evidence Of Insurability means you must:

1.  Complete and sign our medical history statement;

2.  Sign our form authorizing us to obtain information about your health;

3.  Undergo a physical examination, if required by us, which may include blood testing; and

4.  At your expense, provide any additional information about your insurability that we may reasonably require.

Group Policy means the group short term disability insurance policy issued by us to the Policyowner and identified by the Group Policy Number.

Injury means an injury to your body.

Maximum Benefit Period means the longest period for which STD Benefits are payable for any one period of continuous Disability, whether from one or more causes. It begins at the end of the Benefit Waiting Period. No STD Benefits are payable after the end of the Maximum Benefit Period, even if you are still Disabled. See **Coverage Features**.

Noncontributory means the Policyowner or Employer pays the entire premium for your insurance.

Physician means a licensed medical professional, other than yourself, acting within the scope of the license.

Pregnancy means your pregnancy, childbirth, or related medical conditions, including complications of pregnancy.

Prior Plan means your Employer's group short term disability insurance plan in effect on the day before the effective date of your Employer's coverage under the Group Policy and which is replaced by the Group Policy.

Sickness means your sickness, illness, or disease.

Spouse means a person to whom you are legally married.

STD Benefit means the weekly benefit payable to you under the terms of the Group Policy.

STDC97X

# STANDARD INSURANCE COMPANY

A Stock Life Insurance Company
900 SW Fifth Avenue
Portland, Oregon 97204-1282
(503) 321-7000

*People, Not Just Policies.®*

## CERTIFICATE

## GROUP LONG TERM DISABILITY INSURANCE

| | |
|---|---|
| Policyowner: | City of Los Angeles |
| Policy Number: | 630363-D |
| Effective Date: | January 1, 2001 |

A Group Policy has been issued to the Policyowner. We certify that you will be insured as provided by the terms of the Group Policy. If your coverage is changed by an amendment to the Group Policy, we will provide the Policyowner with a revised Certificate or other notice to be given to you.

Possession of this Certificate does not necessarily mean you are insured. You are insured only if you meet the requirements set out in this Certificate.

"We", "us" and "our" mean Standard Insurance Company. "You" and "your" mean the Member. All other defined terms appear with the initial letter capitalized. Section headings, and references to them, appear in boldface type.

President

GC190-LTD/S399

*Printed on recycled paper.*

# Table of Contents

COVERAGE FEATURES ........................................................................... 1
   GENERAL POLICY INFORMATION ...................................................... 1
   BECOMING INSURED ...................................................................... 1
   PREMIUM CONTRIBUTIONS ............................................................. 2
   SCHEDULE OF INSURANCE .............................................................. 2
   DISABILITY PROVISIONS ................................................................. 3
   EXCLUSIONS AND LIMITATIONS ....................................................... 3
   DEDUCTIBLE INCOME .................................................................... 4
   OTHER PROVISIONS ...................................................................... 4
INSURING CLAUSE .............................................................................. 5
DEFINITION OF DISABILITY .................................................................. 5
RETURN TO WORK INCENTIVE ............................................................. 6
REASONABLE ACCOMMODATION EXPENSE BENEFIT ................................. 6
TEMPORARY RECOVERY ...................................................................... 6
WHEN LTD BENEFITS END ................................................................... 7
PREDISABILITY EARNINGS .................................................................. 7
DEDUCTIBLE INCOME ......................................................................... 8
EXCEPTIONS TO DEDUCTIBLE INCOME .................................................. 9
RULES FOR DEDUCTIBLE INCOME ........................................................ 10
SURVIVORS BENEFIT .......................................................................... 10
WAIVER OF PREMIUM ........................................................................ 10
BENEFITS AFTER INSURANCE ENDS OR IS CHANGED ............................... 11
EFFECT OF NEW DISABILITY ............................................................... 11
EXCLUSIONS ..................................................................................... 11
LIMITATIONS .................................................................................... 12
CLAIMS ........................................................................................... 12
ALLOCATION OF AUTHORITY .............................................................. 14
TIME LIMITS ON LEGAL ACTIONS ......................................................... 14
INCONTESTABILITY PROVISIONS .......................................................... 14
CONTINUITY OF COVERAGE ................................................................ 15
WHEN YOUR INSURANCE BECOMES EFFECTIVE ...................................... 15
ACTIVE WORK PROVISIONS ................................................................. 16
WHEN YOUR INSURANCE ENDS ........................................................... 16
REINSTATEMENT OF INSURANCE ......................................................... 17
CLERICAL ERROR AND MISSTATEMENT ................................................. 17
TERMINATION OR AMENDMENT OF THE GROUP POLICY ........................... 18
DEFINITIONS .................................................................................... 18
POLICYOWNER PROVISIONS ................................................................ 19

# Index of Defined Terms

Active Work, 16
Actively At Work, 16
Allowable Periods, 6
Any Occupation Income Level, 3
Any Occupation Of Disability, 5
Any Occupation Period, 3

Benefit Waiting Period, 2, 18

Change In Family Status, 18
Class Definition, 1
Contributory, 18
CPI-W, 18

Disability, 5
Disabled, 5
Domestic Partner, 19

Eligibility Waiting Period, 19
Employer, 1
Evidence of Insurability, 19
Exclusion Period for Plan 1, 3
Exclusion Period for Plan 2, 3

Group Policy, 19
Group Policy Effective Date, 1
Group Policy Number, 1

Hospital, 12

Indexed Predisability Earnings, 19
Injury, 19

LTD Benefit, 19

Material Duties, 5
Maximum Benefit Period, 2, 19

Maximum LTD Benefit, 2
Member, 1
Mental Disorder, 12
Minimum LTD Benefit, 2

Noncontributory, 19

Own Occupation, 5
Own Occupation Income Level, 3
Own Occupation Period, 3

Partial Disability, 5
Physical Disease, 19
Physician, 19
Policyowner, 1
Predisability Earnings, 7
Preexisting Condition, 11
Preexisting Condition Period for Plan 1,
    3
Preexisting Condition Period for Plan 2,
    3
Pregnancy, 19
Proof Of Loss, 13
PSBI, 15

Reasonable Accommodation Expense
    Benefit, 4, 6
Return To Work Incentive, 6

Salary Continuation Offset, 3
Spouse, 19

Temporary Recovery, 6

War, 11
Work Earnings, 6

# COVERAGE FEATURES

This section contains many of the features of your long term disability (LTD) insurance. Other provisions, including exclusions, limitations, and Deductible Income, appear in other sections. Please refer to the text of each section for full details. The Table of Contents and the Index of Defined Terms help locate sections and definitions.

## GENERAL POLICY INFORMATION

| | |
|---|---|
| Group Policy Number: | 630363-D |
| Policyowner: | City of Los Angeles |
| Employer(s): | City of Los Angeles |
| Group Policy Effective Date: | January 1, 2001 |
| Policy Issued in: | California |

## BECOMING INSURED

To become insured you must: (a) Be a Member; (b) Complete your Eligibility Waiting Period; and (c) Meet the requirements in **Active Work Provisions** and **When Your Insurance Becomes Effective.**

Definition of Member:

You are a Member if you are (a) an active civilian employee of the Employer, (b) regularly working at least 40 hours each pay period, (c) a citizen or resident of the United States or Canada, and (d) one of the following:

1.  A contributing member of the City Employees' Retirement System, and not represented by an employee representation unit; or

2.  Eligible for membership in one of the employee representation units for which an Employer-sponsored short term disability plan has been negotiated in a Memorandum Of Understanding (MOU); or

3.  An active elected official or member of the Board of Public Works of the Employer.

You are not a Member if you are:

1.  A part-time, intermittent, temporary or seasonal employee, or employee in a similar position; or

2.  A full-time member of the armed forces of any country.

Class Definition:

Not applicable

Eligibility Waiting Period:

You are eligible on one of the following dates:

If you are a Member on the Group Policy Effective Date, you are eligible on that date.

If you become a Member after the Group Policy Effective Date, you are eligible on the date you become a Member.

| Evidence Of Insurability: | Required: |
| --- | --- |
| | a. For late application for Contributory insurance. |
| | b. For reinstatements if required. |

## PREMIUM CONTRIBUTIONS

| Insurance is: | Plan 1: Noncontributory (Basic) |
| --- | --- |
| | Plan 2: Contributory (Supplemental) |

The cost of insurance may be funded by contributions to an IRC Section 125 Cafeteria Plan.

## SCHEDULE OF INSURANCE

You may apply to become insured under Plan 2. If you do not become insured under Plan 2, you will automatically become insured under Plan 1, provided you meet the requirements to become insured under the Group Policy.

### Plan 1

| LTD Benefit: | 50% of the first $4,000 of your Predisability Earnings, reduced by Deductible Income. |
| --- | --- |
| Maximum LTD Benefit: | $2,000 before reduction by Deductible Income. |
| Minimum LTD Benefit: | $100 or 10% of your LTD Benefit before reduction by Deductible Income, whichever is greater. |
| Benefit Waiting Period: | 180 days, plus the period for which you are eligible for 100% or 75% sick leave pay under the Employer's sick leave plan. |
| Maximum Benefit Period: | Determined by your age when Disability begins, as follows: |
| Age | Maximum Benefit Period |

67 or younger ..................................... 1 year 6 months
68 .................................................. 1 year 3 months
69 or older.......................................... 1 year

### Plan 2

| LTD Benefit: | 66 2/3% of the first $18,000 of your Predisability Earnings, reduced by Deductible Income. |
| --- | --- |
| Maximum LTD Benefit: | $12,000 before reduction by Deductible Income. |
| Minimum LTD Benefit: | $100 or 10% of your LTD Benefit before reduction by Deductible Income, whichever is greater. |
| Benefit Waiting Period: | 180 days, plus the period for which you are eligible for 100% or 75% sick leave pay under the Employer's sick leave plan. |

| Maximum Benefit Period: | Determined by your age when Disability begins, as follows: |
|---|---|
| Age | Maximum Benefit Period |

| | |
|---|---|
| 61 or younger ....................................... | To age 65, or 3 years 6 months, if longer. |
| 62............................................................ | 3 years 6 months |
| 63............................................................ | 3 years |
| 64............................................................ | 2 years 6 months |
| 65............................................................ | 2 years |
| 66............................................................ | 1 year 9 months |
| 67............................................................ | 1 year 6 months |
| 68............................................................ | 1 year 3 months |
| 69 or older............................................... | 1 year |

## DISABILITY PROVISIONS

| Own Occupation Period: | The first 24 months for which LTD Benefits are paid. |
|---|---|
| Any Occupation Period: | From the end of the Own Occupation Period to the end of the Maximum Benefit Period. (Only applies to Members insured under Plan 2.) |
| Partial Disability: | Covered |
| Own Occupation Income Level: | 80% of your Indexed Predisability Earnings. |
| Any Occupation Income Level: | 66 2/3% of your Indexed Predisability Earnings. |

See **Definition of Disability** for more information.

## EXCLUSIONS AND LIMITATIONS

| Preexisting Condition Exclusion: | Yes |
|---|---|
| Preexisting Condition Period for Plan 1: | The 90 day period just before your insurance under Plan 1 becomes effective. |
| Treatment-Free Period for Plan 1: | 6 months while insured under Plan 1 |
| Exclusion Period for Plan 1: | 12 months while insured under Plan 1 |
| Preexisting Condition Period for Plan 2: | The 90 day period just before your insurance under Plan 2 becomes effective. |
| Treatment-Free Period for Plan 2: | 6 months while insured under Plan 2 |
| Exclusion Period for Plan 2: | 12 months while insured under Plan 2 |

See **Exclusions** and **Limitations** for this and other exclusions and limitations.

## DEDUCTIBLE INCOME

Social Security Offset:          Full offset

Salary Continuation Offset:      100% or 75% sick leave pay or other salary continuation
                                 which becomes payable to you by your Employer after the
                                 Benefit Waiting Period, but not including vacation pay.

See **Deductible Income** for this and other Deductible Income.

## OTHER PROVISIONS

Survivors Benefit Amount:        A lump sum equal to 6 times your LTD Benefit without
                                 reduction by Deductible Income.

Estate Payment Allowed:          No

Continuity of Coverage:          Yes

Reasonable Accommodation
Expense Benefit:                 The expenses incurred for the reasonable accommodation
                                 or $500, whichever is less.

Predisability Earnings based on: Earnings in effect on your last full day of Active Work.

# INSURING CLAUSE

If you become Disabled while insured under the Group Policy, we will pay LTD Benefits according to the terms of the Group Policy after we receive satisfactory Proof Of Loss.

# DEFINITION OF DISABILITY

You are Disabled if you meet one of the following definitions during the period it applies:

    A.  Own Occupation Definition of Disability;

    B.  Any Occupation Definition of Disability; or

    C.  Partial Disability Definition.

Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as your regular and ordinary employment with the Employer. Your Own Occupation is not limited to your job with your Employer.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation.

A.  Own Occupation Definition Of Disability

    During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.

    You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of your Own Occupation.

    Note: You are not Disabled merely because your right to perform your Own Occupation is restricted, including a restriction or loss of license, or because you suffer a loss of Predisability Earnings as a result of disclosure of any Physical Disease, Injury, Pregnancy or Mental Disorder.

B.  Any Occupation Definition Of Disability

    During the Any Occupation Period you are required to be Disabled from all occupations.

    You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of any gainful occupation for which you are reasonably fitted by education, training and experience.

C.  Partial Disability Definition

    1.  During the Benefit Waiting Period and the Own Occupation Period, you are Partially Disabled when you work in your Own Occupation but, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to earn the Own Occupation Income Level or more.

    2.  During the Any Occupation Period, you are Partially Disabled when you work in an occupation but, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to earn the Any Occupation Income Level, or more, in that occupation and in all other occupations for which you are reasonably fitted under the Any Occupation Definition of Disability.

You may work in another occupation while you meet the Own Occupation Definition of Disability. If you are Disabled from your Own Occupation, there is no limit on your Work Earnings in another occupation. Your Work Earnings may be Deductible Income. See **Return To Work Incentive** and **Deductible Income**.

Your Any Occupation Period, Any Occupation Income Level, Own Occupation Period, and Own Occupation Income Level are shown in the **Coverage Features**.

## RETURN TO WORK INCENTIVE

A.  During The Benefit Waiting Period

You may serve your Benefit Waiting Period while working, if you meet either the Own Occupation Definition of Disability or the Partial Disability Definition.

B.  After The Benefit Waiting Period

You are eligible for the Return To Work Incentive on the first day you work after the Benefit Waiting Period if LTD Benefits are payable on that date. The Return To Work Incentive changes 12 months after that date, as follows:

1.  During the first 12 months, your Work Earnings will be Deductible Income as determined below:

a.  Determine the amount of your LTD Benefit as if there were no Deductible Income, and add your Work Earnings to that amount.

b.  Determine 100% of your Indexed Predisability Earnings.

c.  If a. is greater than b., the difference will be Deductible Income.

2.  After those first 12 months, 50% of your Work Earnings will be Deductible Income.

Work Earnings means your gross monthly earnings from work you perform while Disabled, including earnings from your Employer, any other employer, or self-employment. Your earnings will be included in Work Earnings when you have the right to receive them. If you are paid in a lump sum or on a basis other than monthly, we will prorate your Work Earnings over the period of time to which they apply. If no period of time is stated, we will use a reasonable one. Work Earnings will not include any renewal commissions, overwriting renewal commissions, or service fees received on business sold before you become Disabled.

## REASONABLE ACCOMMODATION EXPENSE BENEFIT

If you are Disabled and return to work in any occupation for any employer, not including self employment, as a result of a reasonable accommodation made by such employer, we will pay that employer a Reasonable Accommodation Expense Benefit as shown in the **Coverage Features**.

The Reasonable Accommodation Expense Benefit is payable only if the reasonable accommodation is approved by us in writing prior to its implementation.

## TEMPORARY RECOVERY

You may temporarily recover from your Disability, and then become Disabled again from the same cause or causes, without having to serve a new Benefit Waiting Period. Temporary Recovery means you cease to be Disabled for no longer than the applicable Allowable Period.

A.  Allowable Periods

1.  During the Benefit Waiting Period: a total of 30 days of recovery.

2.  During the Maximum Benefit Period: 180 days for each period of recovery.

B.  Effect Of Temporary Recovery

If your Temporary Recovery does not exceed the Allowable Periods, 1 through 5 below will apply.

1.  The Predisability Earnings used to determine your LTD Benefit will not change.

2.  The period of Temporary Recovery will not count toward your Benefit Waiting Period, your Maximum Benefit Period or your Own Occupation Period.

3.  No LTD Benefits will be payable for the period of Temporary Recovery.

4.  No LTD Benefits will be payable after benefits become payable to you under any other group long term disability insurance policy under which you become insured during your period of Temporary Recovery.

5.  Except as stated above, the provisions of the Group Policy will be applied as if there had been no interruption of your Disability.

## WHEN LTD BENEFITS END

Your LTD Benefits end automatically on the earliest of 1 through 4 below.

1.  The date you are no longer Disabled.

2.  The date your Maximum Benefit Period ends.

3.  The date you die.

4.  The date benefits become payable under any other group long term disability insurance policy under which you become insured during a period of Temporary Recovery.

## PREDISABILITY EARNINGS

Your Predisability Earnings will be based on your earnings in effect on your last full day of Active Work unless a different date applies (see the **Coverage Features**).  Any subsequent change in your earnings will not affect your Predisability Earnings.

Predisability Earnings means your monthly rate of earnings from your Employer, including:

1.  Contributions you make through a salary reduction agreement with your Employer to:

   a.  An Internal Revenue Code (IRC) Section 401(k), 403(b), 408(k), or 457 deferred compensation arrangement; or

   b.  An executive nonqualified deferred compensation arrangement.

2.  Shift differential pay.

3.  Amounts contributed to your fringe benefits according to a salary reduction agreement under an IRC Section 125 plan.

4.  Bonuses as defined by the Los Angeles City Employees' Retirement System.

Predisability Earnings does not include:

1.  Commissions.

2.  Overtime pay.

3.  Your Employer's contributions on your behalf to any deferred compensation arrangement or pension plan.

4.  Any renewal commissions, overwriting renewal commissions, or service fees.

5.  Any other extra compensation.

If you are paid on an annual contract basis, your monthly rate of earnings is one-twelfth (1/12th) of your annual contract salary.

If you are paid hourly, your monthly rate of earnings is based on your hourly pay rate multiplied by the number of hours you are regularly scheduled to work per month, but not more than 173 hours. If you do not have regular work hours, your monthly rate of earnings is based on the average number of hours you worked per month during the preceding 12 calendar months (or during your period of employment if less than 12 months), but not more than 173 hours.

## DEDUCTIBLE INCOME

Subject to **Exceptions To Deductible Income**, Deductible Income means:

1.  Sick pay or other salary continuation as shown in the **Coverage Features**.

2.  Your Work Earnings, as described in the **Return To Work Incentive**.

3.  Any amount you receive or are eligible to receive because of your disability, including amounts for partial or total disability, whether permanent, temporary, or vocational, under any of the following:

    a.  A workers' compensation law;

    b.  The Jones Act;

    c.  Maritime Doctrine of Maintenance, Wages or Cure;

    d.  Longshoremen's and Harbor Worker's Act; or

    e.  Any similar act or law.

4.  Any amount you, your spouse, or your children under age 18 receive or are eligible to receive because of your disability or retirement under:

    a.  The Federal Social Security Act;

    b.  The Canada Pension Plan;

    c.  The Quebec Pension Plan;

    d.  The Railroad Retirement Act; or

    e.  Any similar plan, act, or law.

Benefits your spouse or children receive or are eligible to receive because of your disability are Deductible Income regardless of marital status, custody, or place of residence.

The **Coverage Features** states which one of the following options applies to your Social Security benefits.

    a.  Full offset: Both the primary benefit (the benefit awarded to you) and dependents benefits are Deductible Income.

    b.  Primary offset: Primary benefits are Deductible Income, but dependents benefits are not.

    c.  Partial dependents offset: Primary benefits are Deductible Income. Dependents benefits are Deductible Income as determined below:

        (1)  Determine the amount of your LTD Benefit as if there were no Deductible Income, and add your dependents benefits to that amount.

        (2)  Multiply your Predisability Earnings by the dependents limit.

(3) If (1) is greater than (2), the difference will be Deductible Income.

5. Any amount you receive or are eligible to receive because of your disability under any state disability income benefit law or similar law.

6. Any earnings or compensation included in Predisability Earnings which you receive or are eligible to receive while LTD Benefits are payable.

7. Any amount you receive or are eligible to receive because of your disability under any other group disability plan or group disability insurance policy.

8. Any disability or retirement benefits you receive or are eligible to receive under your Employer's retirement plan, including a public employee retirement system, a state teacher retirement system, and a plan arranged and maintained by a union or employee association for the benefit of its members.

   If any of these plans has two or more payment options, the option which comes closest to providing you a monthly income for life with no survivors benefit will be Deductible Income, even if you choose a different option.

9. Any amount you receive by compromise, settlement, or other method as a result of a claim for any of the above, whether disputed or undisputed.

## EXCEPTIONS TO DEDUCTIBLE INCOME

Deductible Income does not include:

1. Any cost of living increase in any Deductible Income other than Work Earnings, if the increase becomes effective while you are Disabled and while you are eligible for the Deductible Income.

2. Reimbursement for hospital, medical, or surgical expense.

3. Reasonable attorneys fees incurred in connection with a claim for Deductible Income.

4. Benefits from any individual disability insurance policy.

5. California Workers' Compensation benefits for permanent total or permanent partial disability.

6. Early retirement benefits under the Federal Social Security Act which are not actually received.

7. Group credit or mortgage disability insurance benefits.

8. Accelerated death benefits paid under a life insurance policy.

9. Benefits from a through h below.

   a. Profit sharing plan.

   b. Thrift or savings plan.

   c. Deferred compensation plan.

   d. Plan under IRC Section 401(k), 408(k), or 457.

   e. Individual Retirement Account (IRA).

   f. Tax Sheltered Annuity (TSA) under IRC Section 403(b).

   g. Stock ownership plan.

   h. Keogh (HR-10) plan.

## RULES FOR DEDUCTIBLE INCOME

A. Monthly Equivalents

Each month we will determine your LTD Benefit using the Deductible Income for the same monthly period, even if you actually receive the Deductible Income in another month.

If you are paid Deductible Income in a lump sum or by a method other than monthly, we will determine your LTD Benefit using a prorated amount. We will use the period of time to which the Deductible Income applies. If no period of time is stated, we will use a reasonable one.

B. Your Duty To Pursue Deductible Income

You must pursue Deductible Income for which you may be eligible. We may ask for written documentation of your pursuit of Deductible Income. You must provide it within 60 days after we mail you our request. Otherwise, we may reduce your LTD Benefits by the amount we estimate you would be eligible to receive upon proper pursuit of the Deductible Income.

C. Pending Deductible Income

We will not deduct pending Deductible Income until it becomes payable. You must notify us of the amount of the Deductible Income when it is approved. You must repay us for the resulting overpayment of your claim.

D. Overpayment Of Claim

We will notify you of the amount of any overpayment of your claim under any group disability insurance policy issued by us. You must immediately repay us. You will not receive any LTD Benefits until we have been repaid in full. In the meantime, any LTD Benefits paid, including the Minimum LTD Benefit, will be applied to reduce the amount of the overpayment. We may charge you interest at the legal rate for any overpayment which is not repaid within 30 days after we first mail you notice of the amount of the overpayment.

## SURVIVORS BENEFIT

If you die while LTD Benefits are payable, we will pay a Survivors Benefit according to 1 through 4 below.

1. The amount of the Survivors Benefit is shown in the **Coverage Features**.

2. The Survivors Benefit will first be applied to reduce any overpayment of your claim.

3. The Survivors Benefit will be paid at our option to any one or more of the following:

   a. Your surviving Spouse/Domestic Partner;

   b. Your surviving unmarried children under age 25; or

   c. Any person providing the care and support of any of them.

4. If you are not survived by a Spouse/Domestic Partner or any unmarried child under age 25, no Survivors Benefit will be paid unless payment to your estate is allowed as stated in the **Coverage Features**.

## WAIVER OF PREMIUM

Your insurance will continue without payment of premiums as follows:

1. During the first 6 months of a family or medical leave approved by the Employer.

2. While benefits are payable to you under the Policyowner's group short term disability plan.

3. While LTD Benefits are payable to you.

## BENEFITS AFTER INSURANCE ENDS OR IS CHANGED

During each period of continuous Disability, we will pay LTD Benefits according to the terms of the Group Policy in effect on the date you become Disabled. Your right to receive LTD Benefits will not be affected by:

1. Termination of the Group Policy after you become Disabled; or

2. Any amendment to the Group Policy that is effective after you become Disabled.

## EFFECT OF NEW DISABILITY

If a period of Disability is extended by a new cause while LTD Benefits are payable, LTD Benefits will continue while you remain Disabled. However, 1 and 2 apply.

1. LTD Benefits will not continue beyond the end of the original Maximum Benefit Period.

2. All provisions of the Group Policy, including the **Exclusions** and **Limitations** sections, will apply to the new cause of Disability.

## EXCLUSIONS

A. War

You are not covered for a Disability caused or contributed to by War or any act of War. War means declared or undeclared war, whether civil or international, and any substantial armed conflict between organized forces of a military nature.

B. Intentionally Self-Inflicted Injury

You are not covered for a Disability caused or contributed to by an intentionally self-inflicted Injury, while sane or insane.

C. Preexisting Condition

   1. Definition

   Preexisting Condition means a mental or physical condition for which you have done any of the following at any time during the Preexisting Condition Period shown in the **Coverage Features**.

      a. Consulted a Physician.

      b. Received medical treatment or services.

      c. Taken prescribed drugs or medications.

   2. Exclusion

   You are not covered for a Disability caused or contributed to by a Preexisting Condition or medical or surgical treatment of a Preexisting Condition unless, on the date you become Disabled, you:

      a. Have been continuously insured under the Group Policy for the entire Exclusion Period shown in the **Coverage Features**, and have been Actively At Work for at least one full day after the end of the Exclusion Period; or

   b.  Have been continuously insured under the Group Policy for the entire Treatment-Free Period shown in the **Coverage Features** without having done any of the following in connection with the Preexisting Condition:

      1.  Consulted a Physician.

      2.  Received medical treatment or services.

      3.  Taken prescribed drugs or medications.

D.  Violent Or Criminal Conduct

You are not covered for a Disability caused or contributed to by your committing or attempting to commit an assault or felony, or actively participating in a violent disorder or riot. Actively participating does not include being at the scene of a violent disorder or riot while performing your official duties.

## LIMITATIONS

A.  Care Of A Physician

You must be under the ongoing care of a Physician in the appropriate specialty as determined by us, during the Benefit Waiting Period. No LTD Benefits will be paid for any period of Disability when you are not under the ongoing care of a Physician in the appropriate specialty as determined by us.

B.  Mental Disorder, Alcohol Use, Alcoholism Or Drug Use

Payment of LTD Benefits is limited to 18 months during your entire lifetime for a Disability caused or contributed to by a Mental Disorder, or your use of alcohol, alcoholism, use of any drug, including hallucinogens, or drug addiction.

However, if you are confined in a Hospital at the end of the 18 months, this limitation will not apply while you are continuously confined.

Mental Disorder means any mental, emotional, behavioral, psychological, personality, cognitive, mood or stress- related abnormality, disorder, disturbance, dysfunction or syndrome, regardless of cause, including any biological or biochemical disorder or imbalance of the brain. Mental Disorder includes, but is not limited to, bipolar affective disorder, organic brain syndrome, schizophrenia, psychotic illness, manic depressive illness, depression and depressive disorders, or anxiety and anxiety disorders.

Hospital means a legally operated hospital providing full- time medical care and treatment under the direction of a full-time staff of licensed Physicians. Rest homes, nursing homes, convalescent homes, homes for the aged, and facilities primarily affording custodial, educational, or rehabilitative care are not Hospitals.

## CLAIMS

A.  Filing A Claim

Claims should be filed on our forms. If you do not receive our forms within 15 days after you ask for them, you may submit your claim in a letter to us. The letter should include the date disability began, and the cause and nature of the disability.

B.  Time Limits On Filing Proof Of Loss

You must give us Proof Of Loss within 90 days after the end of the Benefit Waiting Period. If you cannot do so, you must give it to us as soon as reasonably possible, but not later than one year

after that 90 day period. If Proof Of Loss is filed outside these time limits, your claim will be denied. These limits will not apply while you lack legal capacity.

C.  Proof Of Loss

Proof Of Loss means written proof that you are Disabled and entitled to LTD Benefits. Proof Of Loss must be provided at your expense.

D.  Documentation

At your expense, you must submit completed claims statements, your signed authorization for us to obtain information, and any other items we may reasonably require in support of your claim. If you do not provide the documentation within 60 days after we mail you our request, your claim may be denied.

E.  Investigation Of Claim

We may investigate your claim at any time.

At our expense, we may have you examined at reasonable intervals by specialists of our choice. We may deny or suspend LTD Benefits if you fail to attend an examination or cooperate with the examiner.

F.  Time Of Payment

We will pay LTD Benefits within 60 days after you satisfy Proof Of Loss.

LTD Benefits will be paid to you at the end of each month you qualify for them. LTD Benefits remaining unpaid at your death will be paid to the person(s) receiving the Survivor Benefit. If no Survivor Benefit is paid, the unpaid LTD Benefits will be paid to your estate.

G.  Notice Of Decision On Claim

You will receive a written decision on your claim within a reasonable time after we receive your claim.

If you do not receive our decision within 90 days after we receive your claim, you will have an immediate right to request a review as if your claim had been denied.

If we deny any part of your claim, you will receive a written notice of denial containing:

1.  The reasons for our decision;

2.  Reference to the parts of the Group Policy on which our decision is based;

3.  A description of any additional information needed to support your claim; and

4.  Information concerning your right to a review of our decision.

H.  Review Procedure

You must request in writing a review of a denial of all or part of your claim within 60 days after you receive notice of the denial.

When you request a review, you may send us written comments or other items to support your claim. You may review any non-privileged information that relates to your request for review.

We will review your claim promptly after we receive your request. We will send you a notice of our decision within 60 days after we receive your request, or within 120 days if special circumstances require an extension. We will state the reasons for our decision and refer you to the relevant parts of the Group Policy.

I.  Assignment

The rights and benefits under the Group Policy are not assignable.

## ALLOCATION OF AUTHORITY

Except for those functions which the Group Policy specifically reserves to the Policyowner, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.

Our authority includes, but is not limited to:

1. The right to resolve all matters when a review has been requested;

2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;

3. The right to determine:

   a. Eligibility for insurance;

   b. Entitlement to benefits;

   c. Amount of benefits payable;

   d. Sufficiency and the amount of information we may reasonably require to determine a., b., or c., above.

Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

## TIME LIMITS ON LEGAL ACTIONS

No action at law or in equity may be brought until 60 days after you have given us Proof Of Loss. No such action may be brought more than three years after the earlier of:

1. The date we receive Proof Of Loss; and

2. The end of the period within which Proof Of Loss is required to be given.

## INCONTESTABILITY PROVISIONS

A. Incontestability Of Member's Insurance

Any statement you make to obtain or to increase insurance is a representation and not a warranty.

No misrepresentation by you will be used to reduce or deny your claim or contest the validity of your insurance unless:

1. Your insurance would not have been approved if we had known the truth; and

2. We have given you a copy of a written instrument signed by you which contains your misrepresentation.

After your insurance has been in effect for two years, we will not use a misrepresentation by you to reduce or deny your claim, unless it was a fraudulent misrepresentation.

B. Incontestability Of Group Policy

Any statement made by the Policyowner or Employer to obtain the Group Policy is a representation and not a warranty.

No misrepresentation by the Policyowner or Employer will be used to deny a claim or to deny the validity of the Group Policy unless:

1. The Group Policy would not have been issued if we had known the truth; and

2.  We have given the Policyowner or Employer a copy of a written instrument signed by the Policyowner or Employer which contains the misrepresentation.

The validity of the Group Policy will not be contested after it has been in force for two years, except for nonpayment of premiums or fraudulent misrepresentations.

## CONTINUITY OF COVERAGE

If your Disability is subject to the Preexisting Condition Exclusion, LTD Benefits will be payable if:

1.  You were insured under the Prior Plan on the day before the effective date of your Employer's coverage under the Group Policy;

2.  You became insured under the Group Policy when your insurance under the Prior Plan ceased;

3.  You were continuously insured under the Group Policy from the effective date of your insurance under the Group Policy through the date you became Disabled from the Preexisting Condition; and

4.  Benefits would have been payable under the Prior Plan if it had remained in force, taking into account the preexisting condition exclusion, if any, of the Prior Plan.

Payment of your LTD Benefit will be under the terms of the Prior Plan or the Group Policy, whichever pays less.

## WHEN YOUR INSURANCE BECOMES EFFECTIVE

The **Coverage Features** states whether your insurance is Contributory or Noncontributory.

A.  Noncontributory Insurance

Subject to the **Active Work Provisions**, your Noncontributory insurance becomes effective on the later of (a) the date you become eligible, and (b) the date your enrollment form is received by PSBI (Prudential Service Bureau International).

B.  Contributory Insurance

You must apply in writing for Contributory insurance and agree to pay premiums. Subject to the **Active Work Provisions**, your Contributory insurance becomes effective on the appropriate following date:

1.  If you become a Member before November 1, 1997, the following will apply:

a.  If you enroll for Contributory insurance under the Group Policy before November 1, 1997, your Contributory insurance becomes effective on January 1, 1998.

b.  If you do not enroll for Contributory insurance under the Group Policy before November 1, 1997, you must wait until the following annual enrollment period to enroll and you will be required to submit satisfactory Evidence Of Insurability (unless you enroll within 30 days of a Change of Family Status). Your Contributory insurance will become effective on the later of (a) the January 1 following the annual enrollment period in which you enroll, and (b) the date we approve your Evidence Of Insurability.

2.  If you become a Member on or after November 1, 1997, the following will apply:

a.  If your enrollment form is received by PSBI within 60 days after the date you become a Member and you elect Contributory insurance, your Contributory insurance becomes effective on the later of (a) the date you become eligible, and (b) the date your enrollment form is received by PSBI.

b.  If you do not enroll for Contributory insurance under the Group Policy within 60 days after the date you become a Member, you must wait until the following annual enrollment period

to enroll and you will be required to submit satisfactory Evidence Of Insurability (unless you enroll within 30 days of a Change of Family Status). Your Contributory insurance will become effective on the later of (a) the January 1 following the annual enrollment period in which you enroll, and (b) the date we approve your Evidence Of Insurability.

3.  If your enrollment form is received by PSBI within 30 days of a Change In Family Status, you will not be required to submit Evidence Of Insurability. Your insurance will become effective on the later of (a) the date of the Change In Family Status, and (b) the date your enrollment form is received by PSBI. Note: The addition or deletion of Contributory coverage due to a Change In Family Status must be consistent with the nature of the Change In Family Status.

Note: If you wish to terminate Contributory coverage, you may do so during an annual enrollment period or within 30 days of a Change In Family Status.

## ACTIVE WORK PROVISIONS

A.  Active Work Requirement

If you are incapable of Active Work because of Physical Disease, Injury, Pregnancy or Mental Disorder on the day before the scheduled effective date of your insurance, your insurance will not become effective until the day after you complete one full day of Active Work as an eligible Member.

Active Work and Actively At Work mean performing the Material Duties of your Own Occupation at your Employer's usual place of business.

You will also meet the Active Work requirement if:

1.  You were absent from Active Work because of a regularly scheduled day off, holiday, or vacation day;

2.  You were Actively At Work on your last scheduled work day before the date of your absence; and

3.  You were capable of Active Work on the day before the scheduled effective date of your insurance.

B.  Changes In Insurance

This Active Work requirement also applies to any increase in your insurance.  However, if you return to Active Work during a period of Disability or Temporary Recovery (see **Temporary Recovery**), you will not qualify for any change in insurance caused by a change in:

1.  Your status as a member of a class;

2.  The rate of earnings used to determine your Predisability Earnings; or

3.  The terms of the Group Policy.

## WHEN YOUR INSURANCE ENDS

Your insurance ends automatically on the earliest of:

1. The date the last period ends for which you made a premium contribution, if your insurance is Contributory.

2. The date the Group Policy terminates.

3. The date your employment terminates. However, if your employment terminates because you retire, insurance ends on the last day of the calendar month in which you retire.

4. The date you cease to be a Member or enter a non-pay status with the Employer. However, your insurance will be continued during the following periods, unless it ends under 1 through 3 above.

   a. While your Employer is paying you at least the same Predisability Earnings paid to you immediately before you ceased to be a Member.

   b. During the Benefit Waiting Period and while LTD Benefits are payable.

   c. During a leave of absence if continuation of your insurance under the Group Policy is required by a state-mandated family or medical leave act or law.

   d. During the first six months in which you are in a non-pay status, provided you pay premiums for the entire amount of your insurance continued during the period of your non-pay status (including premiums previously paid by the Employer) and you remain insured under the same Plan.

   e. While 100% or 75% sick leave pay is payable to you by your Employer.

## REINSTATEMENT OF INSURANCE

If your insurance ends, you may become insured again as a new Member. However, the following will apply.

1. If your insurance ends because you enter a non-pay status and you return to a pay status within 12 calendar months, you will not be required to provide Evidence Of Insurability to become insured again. However, if you re-enter a pay status after more than 12 calendar months, you will be required to provide Evidence Of Insurability to become insured again.

2. If your insurance ends because you fail to make a required premium contribution, you must provide Evidence Of Insurability to become insured again.

3. If your insurance ends because you are on a federal or state mandated family or medical leave of absence, and you become a Member again immediately following the period allowed, your insurance will be reinstated pursuant to the federal or state mandated family or medical leave act or law.

4. The Preexisting Conditions Exclusion will be applied as if there had been no break in coverage in the following instances:

   a. If you become insured again within 90 days.

   b. If required by federal or state mandated family or medical leave act or law and you become insured again immediately following the period allowed under the family or medical leave act or law.

## CLERICAL ERROR AND MISSTATEMENT

A. Clerical Error

   Clerical error by the Policyowner, your Employer, or their respective employees or representatives will not:

   1. Cause a person to become insured;

2. Invalidate insurance under the Group Policy otherwise validly in force; or

3. Continue insurance under the Group Policy otherwise validly terminated.

B. Misstatement Of Age

If a person's age has been misstated, we will make an equitable adjustment of premiums, benefits, or both. The adjustment will be based on:

1. The amount of insurance based on the correct age; and

2. The difference between the premiums paid and the premiums which would have been paid if the age had been correctly stated.

## TERMINATION OR AMENDMENT OF THE GROUP POLICY

The Group Policy may be terminated by us or the Policyowner according to its terms. It will terminate automatically for nonpayment of premium. The Policyowner may terminate the Group Policy in whole, and may terminate insurance for any class or group of Members, at any time by giving us written notice.

Benefits under the Group Policy are limited to its terms, including any valid amendment. No change or amendment will be valid unless it is approved in writing by one of our executive officers and given to the Policyowner for attachment to the Group Policy. The Policyowner, your Employer and their respective employees or representatives have no right or authority to change or amend the Group Policy or to waive any of its terms or provisions without our signed written approval.

We may change the Group Policy in whole or in part when any change in law or governmental regulation affects our obligations under the Group Policy, or with the Policyowner's consent.

Any such change or amendment of the Group Policy may apply to current or future Members or to any separate classes or groups of Members.

## DEFINITIONS

Benefit Waiting Period means the period you must be continuously Disabled before LTD Benefits become payable. No LTD Benefits are payable for the Benefit Waiting Period. See **Coverage Features.**

Change In Family Status means:

1. Your marriage or divorce.

2. The beginning or ending of a domestic partner relationship.

3. Death of your Spouse/Domestic Partner.

4. Death of your child dependent.

5. Birth or adoption of a child dependent.

6. Termination or commencement of employment for your Spouse/Domestic Partner.

7. A change from part-time to full-time employment status or from full-time to part-time employment status by you or your Spouse/Domestic Partner.

8. Taking of a leave of absence from employment by your Spouse/Domestic Partner.

Contributory means you pay all or part of the premium for your insurance.

CPI-W means the Consumer Price Index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. If the CPI-W is discontinued or changed, we may use a comparable index. Where required, we will obtain prior state approval of the new index.

Domestic Partner means an individual with whom you have completed an affidavit of declaration of domestic partnership, submitted that affidavit to the Employer, and filed that affidavit for public record if required by law.

Eligibility Waiting Period means the period you must be a Member before you become eligible for insurance. See **Coverage Features**.

Providing Evidence Of Insurability means you must:

1. Complete and sign our medical history statement;

2. Sign our form authorizing us to obtain information about your health;

3. Undergo a physical examination, if required by us, which may include blood testing; and

4. At your expense, provide any additional information about your insurability that we may reasonably require.

Group Policy means the group long term disability insurance policy issued by us to the Policyowner and identified by the Group Policy Number.

Indexed Predisability Earnings means your Predisability Earnings adjusted by the rate of increase in the CPI-W. During your first year of Disability, your Indexed Predisability Earnings are the same as your Predisability Earnings. Thereafter, your Indexed Predisability Earnings are determined on each anniversary of your Disability by increasing the previous year's Indexed Predisability Earnings by the rate of increase in the CPI-W for the prior calendar year. The maximum adjustment in any year is 10%. Your Indexed Predisability Earnings will not decrease, even if the CPI-W decreases.

Injury means an injury to your body.

LTD Benefit means the monthly benefit payable to you under the terms of the Group Policy.

Maximum Benefit Period means the longest period for which LTD Benefits are payable for any one period of continuous Disability, whether from one or more causes. It begins at the end of the Benefit Waiting Period. No LTD Benefits are payable after the end of the Maximum Benefit Period, even if you are still Disabled. See **Coverage Features**.

Noncontributory means the Policyowner or Employer pays the entire premium for your insurance.

Physical Disease means a physical disease entity or process that produces structural or functional changes in your body as diagnosed by a Physician.

Physician means a licensed medical professional, other than yourself, acting within the scope of the license.

Pregnancy means your pregnancy, childbirth, or related medical conditions, including complications of pregnancy.

Prior Plan means (a) your Employer's group long term disability insurance plan in effect on the day before the effective date of your Employer's coverage under the Group Policy and which is replaced by the Group Policy; or (b) the Los Angeles City Employees Association's (LACEA) group long term disability insurance plan in effect on the day before the effective date of your Plan 2 insurance coverage under the Group Policy.

Spouse means a person to whom you are legally married.

## POLICYOWNER PROVISIONS

A. Premiums

The premium due on each Premium Due Date is the sum of the premiums for all persons then insured. Premium Rates are shown in the **Coverage Features**.

B. Contributions From Members

The Policyowner determines the amount, if any, of each Member's contribution toward the cost of insurance under the Group Policy.

C. Changes In Premium Rates

We may change Premium Rates when:

1. A change or clarification in law or governmental regulation affects the amount payable under the Group Policy. Any such change in Premium Rates will reflect only the change in our obligations;

2. Factors material to underwriting the Group Policy, including, but not limited to, number of persons insured, age, Predisability Earnings, gender and occupational classification, change by 25% or more; or

3. We and the Policyowner mutually agree to change Premium Rates.

Except as provided above, Premium Rates will not be changed during the Initial Rate Guarantee Period shown in the **Coverage Features**. Thereafter, except as provided above, we may change Premium Rates upon advance written notice to the Policyowner. The minimum advance notice is shown in the **Coverage Features** as Notice of Rate Change. Any such change in Premium Rates may be made effective on any Premium Due Date, but no such change will be made more than once in any contract year. Contract years are successive 12 month periods computed from the end of the Initial Rate Guarantee Period.

D. Payment Of Premiums

All premiums are due on the Premium Due Dates shown in the **Coverage Features**.

Each premium is payable on or before its Premium Due Date directly to us at our home office. The payment of each premium as it becomes due will maintain the Group Policy in force until the next Premium Due Date.

E. Grace Period And Termination For Nonpayment

If a premium is not paid on or before its Premium Due Date, it may be paid during the following Grace Period. The length of the Grace Period is shown in the **Coverage Features**. The Group Policy will remain in force during the Grace Period.

If the premium is not paid during the Grace Period, the Group Policy will terminate automatically at the end of the Grace Period.

The Policyowner is liable for premium for insurance under the Group Policy during the Grace Period. We may charge interest at the legal rate for any premium which is not paid during the Grace Period, beginning with the first day after the Grace Period.

F. Termination For Other Reasons

The Policyowner may terminate the Group Policy by giving us written notice. The effective date of termination will be the later of:

1. The date stated in the notice; and

2. The date we receive the notice.

We may terminate the Group Policy as follows:

1. On any Premium Due Date if the number of persons insured is less than the Minimum Participation Number or less than the Minimum Participation Percentage shown in the **Coverage Features**.

2. On any Premium Due Date if we determine that the Policyowner has failed to promptly furnish any necessary information requested by us, or has failed to perform any other obligations relating to the Group Policy.

The minimum advance notice of such termination by us is the same as the Notice of Rate Change stated in the **Coverage Features.**

G. Premium Adjustments

Premium adjustments involving a return of unearned premiums to the Policyowner will be limited to the 12 months just before the date we receive a request for premium adjustment.

H. Certificates

We will issue certificates to the Policyowner showing the coverage under the Group Policy. The Policyowner will distribute a certificate to each insured Member.

I. Records And Reports

The Policyowner or Employer will furnish on our forms all information reasonably necessary to administer the Group Policy. We have the right at all reasonable times to inspect the payroll and other records of the Policyowner or Employer which relate to insurance under the Group Policy.

J. Notice Of Suit

The Policyowner and Employer shall promptly give us written notice of any lawsuit or other legal proceedings arising under the Group Policy.

K. Entire Contract, Changes

The Group Policy and the application of the Policyowner constitute the entire contract between the parties. A copy of the Policyowner's application is attached to the Group Policy when issued.

The Group Policy may be changed in whole or in part. No change in the Group Policy will be valid unless it is approved in writing by one of our executive officers and given to the Policyowner for attachment to the Group Policy. No agent has authority to change the Group Policy or to waive any of its provisions.

L. Effect On Workers' Compensation, State Disability Insurance

The coverage provided under the Group Policy is not a substitute for coverage under a workers' compensation or state disability income benefit law and does not relieve the Employer of any obligation to provide such coverage.

LTDC97X

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
The Standard Insurance Company; Does 1 Through 100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
John W. Dewitt

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |
| ENDORSED<br>FILED<br>ALAMEDA COUNTY |
| SEP 2 8 2007 |
| CLERK OF THE SUPERIOR COURT |
| By ~~BARBARA LAMOTTE~~ |
| Deputy |

  You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

  *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.  Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.  Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
  *Hay otros requisitos legales.  Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* <br> Superior Court of California County of Alameda <br> 1225 Fallon Street <br> Oakland, California 94612 | CASE NUMBER <br> *(Número del Caso)* <br> 07348742 |
| --- | --- |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Fricker & Mellen & Associates, Tribune Tower, 409 13th Street, 17th Floor, Oakland, CA 94612.
(510) 663-8484                                   Executive Officer/Clerk of the Superior Court

DATE:                    **PAT S. SWEETEN**       Clerk, by       BARBARA LAMOTTE            , Deputy
*(Fecha)* SEP 2 8 2007                          *(Secretario)*                          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

*6167395*

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Timothy J. Fricker, SBN 183309<br>Tribune Tower<br>409 13th Street, 17th Floor<br>Oakland, CA 94612<br><br>TELEPHONE NO.: (510) 663-8484     FAX NO. *(Optional)*: (510) 663-0639<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: John W. DeWitt | **FILED<br>ALAMEDA COUNTY**<br><br>JAN 1 4 2008<br><br>CLERK OF THE SUPERIOR COURT<br>By _____ *Deputy* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME:

PLAINTIFF/PETITIONER: John W. DeWitt

DEFENDANT/RESPONDENT: The Standard Insurance Company, Does 1- 100

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>RG 07348742 |
|---|---|

TO *(insert name of party being served)*: Charlotte Riddle, as agent for service of process for The Standard Insurance

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: November 27, 2007

Timothy J. Fricker
(TYPE OR PRINT NAME)    ▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify)*:
   Civil case cover sheet, statement of damages

*(To be completed by recipient):*

Date this form is signed: 12/20/07

STANDARD INS. CO.
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)    ▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)
ATTORNEY FOR STANDARD INS. CO.

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.USCourtForms.com |

**PROOF OF SERVICE**

I, Ruth A. Chavez, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 California Street, 26th Floor, San Francisco, California 94104. On December 20, 2007, I served a copy of the within document(s):

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT**

☒ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed Delivery Service envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Delivery Service agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Timothy J. Fricker
Tribune Tower
409 13th Street, 17th Floor
Oakland, CA 94612
Tel: (510) 663-8484
Fax: (510) 663-0639

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

1

2      Executed on December 20, 2007, at San Francisco, California.

3

4                                                    _____

5                                                            Ruth A. Chavez

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

ENDORSED
FILED
ALAMEDA COUNTY

JAN 1 ⁵ 2008

CLERK OF THE SUPERIOR COURT
E. BAKER

1  Shawn Hanson (State Bar No. 109321)
   Katherine S. Ritchey (State Bar No. 178409)
2  Emily E. Booth (State Bar No. 248008)
   JONES DAY
3  555 California Street, 26th Floor
   San Francisco, CA 94104
4  Telephone:   (415) 626-3939
   Facsimile:   (415) 875-5700
5  Email: shanson@jonesday.com
   Email: ksritchey@jonesday.com
6  Email: ebooth@jonesday.com

7  Attorneys for Defendant
   Standard Insurance Company
8

9          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                    **COUNTY OF ALAMEDA**

11

12  JOHN W. DEWITT,                          | **CASE NO. RG 07348742**

13              Plaintiff,                    | (Assigned to Winifred Y. Smith)

14       v.

15  STANDARD INSURANCE COMPANY;              | **GENERAL DENIAL AND DEFENSES
    Does 1 Through 100,                      | OF STANDARD INSURANCE
16                                           | COMPANY TO PLAINTIFF'S
                                             | COMPLAINT**
17              Defendant.

18                                           | Complaint Filed:   9-28-2007

19

20       Pursuant to section 431.30(d) of the California Code of Civil Procedure, defendant

21  Standard Insurance Company ("Standard") generally denies each and every allegation of

22  PLAINTIFF'S Complaint filed September 28, 2007.

23       Having answered PLAINTIFF'S Complaint, Standard alleges its defenses. Each defense

24  is asserted as to all causes of action against Standard. By setting forth these defenses, Standard

25  does not assume the burden of proving any fact, issue, or element of a cause of action where such

26  burden properly belongs to PLAINTIFF. Moreover, nothing stated herein is intended or shall be

27  construed as an acknowledgement that any particular issue or subject matter is relevant to

28  PLAINTIFF'S allegations.

SFI-576744v1

General Denial and Defenses of Standard Insurance Company

**First Defense to Entire Complaint**

**(Failure to State a Cause of Action)**

1.    The Complaint, and each cause of action, fails to set forth facts sufficient to state a cause of action upon which relief may be granted against Standard and further fails to state facts sufficient to entitle PLAINTIFF to the relief sought, or to any other relief whatsoever from Standard.

**Second Defense to Entire Complaint**

**(Discharge of Obligations / Unjust Enrichment)**

2.    Standard has performed all obligations required by Standard disability policy, No. 630363-C ("Policy"). PLAINTIFF is not entitled to any additional payment pursuant to the Policy and the payment of any additional amount, as demanded by PLAINTIFF, would amount to a windfall and unjust enrichment.

**Third Defense to Entire Complaint**

**(Waiver)**

3.    Standard is informed and believes that, at all times relevant to the matters alleged in the Complaint, PLAINTIFF was fully informed of the alleged rights he now asserts. PLAINTIFF has acted in a manner inconsistent with the assertion of those rights and, accordingly, has waived the claims he now asserts.

**Fourth Defense to Entire Complaint**

**(Exclusions and Limitations of Coverage)**

4.    PLAINTIFF'S recovery, if any, is limited by the terms and conditions of the Policy, including exclusions and limitations of coverage.

**Fifth Defense to Entire Complaint**

**(Estoppel)**

5.    PLAINTIFF is not entitled to benefits under the terms and conditions of the Policy, and Standard is informed and believes that PLAINTIFF was informed of any rights and claims that he may have against them. PLAINTIFF conducted himself in such a way as to lead Standard to believe that he relinquished any rights he had against Standard, and Standard has

1   relied upon this conduct to its detriment. PLAINTIFF, therefore, is estopped from seeking

2   damages or other relief based upon the allegations of the Complaint.

### Sixth Defense to Entire Complaint

### (Mitigation of Damages)

5       6.      Standard is informed and believes that PLAINTIFF has failed to mitigate his

6   damages, if any.

### Seventh Defense to Entire Complaint

### (Punitive Damages; Constitutionality of Punitive Damages)

9       7.      PLAINTIFF is not entitled to the award of punitive damages insofar as that award

10  would violate Standard's due process or other rights under the United States Constitution, the

11  laws of the United States, or the Constitution or laws of the State of California. Standard further

12  states that PLAINTIFF fails to state sufficient facts to support the prayer for punitive damages

13  against Standard.

### Eighth Defense to Entire Complaint

### (Contributory/Comparative Fault)

16      8.      Standard is informed and believes and thereon alleges that any alleged damages

17  sustained by PLAINTIFF were, at least in part, caused by the actions of PLAINTIFF and/or third

18  parties and resulted from PLAINTIFF'S or third parties' own negligence which equaled or

19  exceeded any alleged negligence or wrongdoing by Standard.

### Ninth Defense to Entire Complaint

### (Statute of Limitations)

22      9.      Standard is informed and believes that plaintiff is barred from bringing some or all

23  claims by the applicable statutes of limitations, including but not limited to Cal. Code Civ. Proc.

24  §§ 337, 338, 339, as well as the contractual procedures and limitations periods for actions at law

25  and equity set forth in the Policy.

### (Right to Assert Additional Defenses)

27      10..     Standard hereby gives notice that it intends to rely on any additional affirmative

28  defenses that become available or apparent during discovery or at any other time during the

1    pendency of this case and, thus, reserves the right to amend its answer to assert such additional

2    defenses.

3          WHEREFORE, Standard prays for judgment as follows:

4          1.      That PLAINTIFF take nothing from Standard by his Complaint;

5          2.      That the Complaint be dismissed with prejudice as to Standard;

6          3.      That Standard recover its attorneys' fees and costs from PLAINTIFF as permitted

7    by law; and

8          4.      For such other and further relief as the Court may deem proper.

9

10   Dated: January 16, 2008                        Jones Day

11

12                                         By: _____
                                               Emily E. Booth

13                                         Attorneys for Defendant
14                                         STANDARD INSURANCE COMPANY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Ruth A. Chavez, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 California Street, 26th Floor, San Francisco, California 94104. On January 16, 2008, I served a copy of the within document(s):

**GENERAL DENIAL AND DEFENSES OF STANDARD INSURANCE COMPANY TO PLAINTIFF'S COMPLAINT**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Fricker & Mellen & Associates
Timothy J. Fricker, Esq.
James G. Mellen, Esq.
Tribune Tower
409 13th Street, 17th Floor
Oakland, CA 94612

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

1    Executed on January 16, 2008, at San Francisco, California.

2

3    _____

4    Ruth A. Chavez

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Ruth A. Chavez, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 California Street, 26th Floor, San Francisco, California 94104. On January 17, 2008, I served a copy of the within document(s):

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Fricker & Mellen & Associates
Timothy J. Fricker, Esq.
James G. Mellen, Esq.
Tribune Tower
409 13th Street, 17th Floor
Oakland, CA 94612
Tel: (510) 663-8484
Fax: (510) 663-0639

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose

1   direction the service was made.

2           Executed on January 17, 2008, at San Francisco, California.

3

4   _____

5                                Ruth A. Chavez

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION
UNDER 28 U.S.C. 1441